## Greer *versus* The Chartiers Railway Company.

G. was active in soliciting subscriptions for the building of a railroad. He took a book from the agent of the company, subscribed therein himself and persuaded others to subscribe, and kept the book about six months. Because of some difference with the agent of the company about the payment for his services he cut his name out of the book and returned it to the company. In a suit by the latter for the amount of his subscription, *Held*, that he had perfected a contract with the company and he was just as much bound as if he had left his name in the book.

November 20th 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.    SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Washington county :* Of October and November Term 1879, No. 88.

Assumpsit by the Chartiers Railway Company against Wesley Greer, to recover the amount of a subscription of defendant to the stock of the plaintiff company.

The material facts are stated in the opinion of this court.

At the trial, before Stowe, P. J. (of Court of Common Pleas, No. 2, of Allegheny county), the defendant submitted the following point, which the court refused.   If the jury should find that the defendant subscribed his name for forty shares of the plaintiff's stock, such subscription was revocable at any time before the defendant permitted the book containing his subscription to go into the hands of the plaintiff company or its agent, and that if the defendant erased his subscription before he returned the book containing it to the company or its agent, he is not liable, and the verdict should be for the defendant.   This refusal constituted the only assignment of error.

In the general charge, the court, inter alia, said :—

"The question in this case is the right of the plaintiff to recover upon the alleged subscription of the defendant, Wesley Greer.   As to the main matters upon which the question of law, connected with that part of the case, arises, there is no dispute.   There is no controversy as to the fact that J. H. Ewing represents the plaintiff ; no controversy as to the fact that he had this subscription book which is offered in evidence, and from which the name of Wesley Greer has been cut out ; that he gave that book to Wesley Greer for the purpose of getting subscribers to it ; that Greer not only subscribed himself, but got a number of other subscribers ; and that subsequently (whether it had previously been seen or not by the agent of the company, Ewing, is a matter perhaps in dispute), but after a time, at all events, the book was given by the defendant to Ewing, the agent of the plaintiff ; and that the name of Wesley Greer was cut from the paper where it had previously been.   That is the substance of the testimony, so far as bears necessarily upon this question, by Ewing ; and there is

no controversy as to the fact set up on the part of Greer.   He admits all these facts ; he admits that he put his name to the paper, and admits that he cut it out.   The first question, and one of very grave importance, and which I am very glad to say my opinion is not to be conclusive upon except as the case stands here, is, does such a state of facts bind the defendant ?   Was Greer at liberty to erase or cut out the name as he did, and thereby release himself from any obligation to the plaintiff ?   If he was, of course the plain-tiff would have no claim ; if he was not, Greer would be bound to pay just as if his name had been allowed to remain there.   As to this question we think the law is with the plaintiff ; that Greer is just as much bound to pay, under the testimony in this case, un-controverted by him, in fact, substantially admitted by him, as regards this question, as though it was upon that book in connection with other people whose names are upon it.   That being the case, as a matter of law, the conclusion becomes absolute and imperative that the plaintiff is entitled to recover the amount of that sub-scription, forty shares, and under the admissions of the defendant in the case with reference to notice, for the penalty of six per cent., which is attached under the Act of Assembly."

Verdict for plaintiff for $1871.20, and after judgment thereon, defendant took this writ.

*D. F. Patterson, Boyd Crumrine* and *Wesley Greer, Jr.,* for plaintiff in error.—A subscription for shares of the capital stock of a railroad company is subject to the incidents and governed by the rules which affect ordinary contracts : P. & C. Railroad Co. *v.* Graham, 12 Casey 77 ; Same *v.* Byers, 8 Id. 22.   Such contract must be in writing : Bucher *v.* D. & M. Railroad Co., 26 P. F. Smith 306 ; P. & S. Railroad Co. *v.* Gazzam, 8 Casey 340.   Like all writings, it must be delivered by the party to be bound to the party who is to receive the benefit, with a common understanding between them as to its binding effect, before it becomes a completed contract.   A writing, before delivery, is simply the work of the writer, and so long as it remains in his custody or control, it may be amended, altered or totally destroyed.   So long as the accept-ance, signed or unsigned, should remain in the hands or under the control of Greer, the contract would be incomplete, and either party would have the right to withdraw altogether from the nego-tiation.   Greer's possession of the paper could in no sense be said to be the possession of the company or of Ewing ; and the company's property in the piece of paper would not be so sacred as to deprive Greer of the right to erase or cut off his signature from it, so long as the custody or control of it remained with him.   Such is clearly the general rule.   Was Greer's possession of the book in legal effect the possession of Ewing or of the company, in such sense as to take the transaction out of the general rule ?   We confidently

[Greer v. The Chartiers Railway Co.]

maintain .that it was not. Nor did Greer's signature create any such relation between him and the other subscribers· on the same book as would restrain or destroy his right to revoke his subscription. Greer made no contract with the other subscribers, nor did they make any contract with him, to pay so much to an organization when formed ; but each subscriber entered into an independent contract with an existing organization.

Counsel for defendant in error contend that when Greer wrote his acceptance on the offer itself, that made a contract. The authorities cited do not support the position. They are cases arising upon contracts by mail; but not one of them rules that the contract is complete so long as the acceptance remains in the custody and control of the acceptor. It must be put in the mail; it must leave the custody of the party to be bound by it. It need not reach the offerer, because, by constituting the mail his agent to convey the offer, he thereby constituted it his agent to receive the acceptance. We refer to " Contracts by Letter," in the American Law Review, April 1873, where the cases are fully reviewed.

*Hampton & Dalzell* and *A. M. Todd*, for defendants in error.— There was nothing left to be done but a delivery of the thing sold, and that was not essential to the contract. There was a contract binding the parties from the moment the offer was accepted : Adams et al. *v.* Lindsell et al., 1 B. & Ald. 681.

In the case of Duncan *v.* Topham, 8 C. B. 225, the contract is said to be closed by mailing the letter of acceptance, although it never reaches its destination. If merely assenting to an offer makes a contract when offer and assent are witnessed by the letters of the respective parties, how much stronger the case in hand ?

Furthermore, the subscription made was in effect a declaration by Greer to every man to whom he presented the book for signature that he had undertaken to pay so much to the building of the railroad. He is in the exact position of the defendant in Cromford & High Peak Railway *v.* Lacey, 3 You. & Jer. 80, cited in Graff *v.* P. & S. Railroad Co., 7 Casey 497. See also Miller *v.* Hanover Junction & T. Railroad Co., 6 Norris 99. When once subscribed, the consent could not be recalled, nor the signature erased even with Greer's consent. Were all the signers bound because of Greer's possession of the book, and he not bound himself?

Mr. Justice TRUNKEY delivered the opinion of the court, January 3d 1881.

A number of persons, including Wesley Greer, proposed to subscribe for capital stock of the Chartiers Valley Railway Company upon certain conditions, which proposition was offered to and refused by the Chartiers Railway Company. Thereupon the Chartiers Rail-

way Company by resolution, reciting that it had received from the Pennsylvania Railroad Company such assurance of pecuniary aid as would, with proper effort on the part of the people of Allegheny and Washington counties, insure the early completion of its railroad, offered for sale five thousand shares of its capital stock, and appointed J. H. Ewing its agent in Washington county to receive subscriptions. Books containing said recital and resolution and terms of subscription were furnished by said company to said Ewing who procured the assistance of several persons in obtaining subscriptions, among them Wesley Greer. From the testimony of Greer it appears that he had been active in soliciting the former subscriptions, the object being to secure the building of the road; that he was active in soliciting these subscriptions; that he took the book, subscribed himself, persuaded others to subscribe, and kept the book about six months; and that he cut out his name before he returned the book, because of a difference respecting payment for his services between himself and Ewing. The single assignment of error is to the court's refusal to charge that the defendant's subscription was revocable at any time before he returned the book to the company or its agent, and that if he returned it with his subscription erased he is not liable. If an agreement was made between the company and Greer there was no error.

"A contract includes a concurrence of intention in two parties, one of whom promises something to the other, who on his part accepts such promise." The company held out the promise, never retracted it, all the time has been ready and willing to perform it, and the only point in dispute is whether Greer actually accepted it. This point is not settled by conceding that Greer, at the time he subscribed, and before he had arisen from his seat or closed the book, could have erased his name and left the proposition as if he had not signed and stipulated the number of shares. He did nothing of the kind; but his subscription remained on the book for months. Until acceptance the party making the offer may withdraw it, after acceptance the obligation is mutual and both parties are bound. This is the governing principle where the contract is made by letter. An offer by letter is a continuing one until the letter be received and for a reasonable time thereafter, during which the party to whom it is addressed may accept the offer, unless he shall have received notice of the withdrawal of the offer. If the offer be accepted before notice of its withdrawal the bargain is struck—there is an agreement founded on mutual assent. This assent is at the moment the letter of acceptance is put in the mail: Adams *v.* Lindsell, 1 B. & Ald. 681; 1 Pars. on Con. 484; Chitty on Con. *14. The Chartiers Railway Company made a continuing offer which became an agreement with each acceptant for the number of shares for which he subscribed. At the time a person signed his name as a continuance of his act he might have

[Greer *v.* The Chartiers Railway Co.]

erased it, as one who had written an acceptance of an offer by letter, before mailing the same might destroy it. But if the subscriber returned the book to the company's agent he could not afterwards withdraw his subscription, for he had completed. the agreement. Greer was acting as agent in soliciting subscriptions, no matter whether for pay or not, and by procuring subscriptions under his own name he declared his acceptance and admitted his agreement for the stipulated number of shares. The book was not his—he had no right to its possession but for a specific use. In that use he exhibited the evidence of his agreement with the company to every subsequent contracting party. Had the book been accidentally destroyed there was ample evidence of the contents of the written contract, upon which he could have held the company to performance; or, if it refused, to payment of damages. Clearly the company was bound to him the same as to any other subscriber, and so was he to the company. While he retained the book the written contract was in his hands—its validity did not depend on the conduct of the depositary—and its unauthorized mutilation did not annul it.

The learned judge of the Common Pleas was of opinion that, upon the facts admitted by the defendant, he had perfected a contract with the plaintiff, and was just as much bound to pay as though he had left his name on the book. We are of same opinion.

Judgment affirmed.